IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WALTER FRANK CROWDER, | § | No. 1:22-CV-479-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| UNITED STATES DEPARTMENT OF | § | |
| AGRICULTURE, TEXAS PARKS & | § | |
| WILDLIFE DEPARTMENT, JOHN | § | |
| SILOVSKY, and MITCH | § | |
| LOCKWOOD, | § | |
| | § | |
| Defendants. | § | |

---

ORDER: (1) ADOPTING REPORT AND RECOMMENDATION OF THE
MAGISTRATE JUDGE; (2) GRANTING MOTIONS TO DISMISS; AND
(3) DENYING MOTION TO AMEND

Before the Court is a Report and Recommendation (the "Report")

(Dkt. # 36) submitted by United States Magistrate Judge Mark Lane.  The Court

finds this matter suitable for disposition without a hearing.  After reviewing the

Report, the Court (1) **ADOPTS** Judge Lane's recommendations, (2) **GRANTS**

Defendants Texas Parks & Wildlife, John Silovsky, and Mitch Lockwood's

(collectively, "TWPD") Motion to Dismiss (Dkt. # 21); (3) **GRANTS** Defendant

United States Department of Agriculture's ("USDA") Motion to Dismiss (Dkt.

# 25); and (4) **DENIES** Plaintiff Walter Frank Crowder's ("Plaintiff" or

"Crowder") Motion for Leave to Amend Pleadings (Dkt. # 40).

BACKGROUND

Because there were no objections to the Background Facts as recited by Judge Lane in his Report, the Court repeats them here.  Crowder is separately permitted and registered by TPWD for three operations in Duval County, Texas: (1) a deer breeder permit, (2) a deer management permit ("DMP"), and (3) a release site registration.  (Dkt. #14 (First Amd. Compl. or FAC) ¶ 5.) Unfortunately, two deer on Crowder's property tested positive for Chronic Wasting Disease ("CWD").

In Texas, all wild animals, including deer, belong to the state.  See Tex. Parks & Wildlife Code § 1.011 ("All wild animals . . . inside the borders of this state are the property of the people of this state.").  It is generally a criminal offense to keep any deer in captivity.  Id. §§ 63.002, 63.104(c), 43.061(a).  The ability to lawfully hold deer in captivity is a privilege granted for two types of relevant operations—deer breeding or deer management.  Id. §§ 43.351–369 (breeder), 43.601–607 (management).

The holder of a deer breeder's permit may breed deer and sell, transfer, or hold in captivity live breeder deer for the purpose of propagation or sale.  Id. § 43.357(a).  However, "[a]ll breeder deer and increase from breeder deer are under the full force of the laws of this state pertaining to deer, and those breeder deer may be held in captivity for propagation in this state only after a deer

breeder's permit is issued by the department under this subchapter."  <u>Id.</u> § 43.364.

Accordingly, breeder deer and their offspring remain the property of the state, not

the permit holder.  <u>Id.</u>; <u>see</u> <u>Anderton v. Texas Parks & Wildlife Dep't</u>,

605 F. App'x 339, 348 (5th Cir. 2015); <u>Bailey v. Smith</u>, 581 S.W.3d 374, 393

(Tex. App.—Austin 2019).

       Management permits allow only management of wild white-tailed

deer within a ranch.  Tex. Parks & Wildlife Code §§ 43.601, 43.602.  A deer

management pen may contain, at most, a single buck and 20 does with any fawns

for eventual release to a surrounding ranch.  31 Tex. Admin. Code §§ 65.134(d),

65.136(d) (requiring release directly into the pasture where deer were captured).

Deer in management pens are always considered free-ranging deer and must

ultimately be released into the wild.  <u>Id.</u> § 65.133(b).  Unlike breeder permits,

management permits do not authorize the holder to sell, barter, or trade deer for

any consideration.  <u>Id.</u> § 65.133(b), (g).  "The deer managed under the permit

remain the property of the people of the state, and the holder of the permit is

considered to be managing the population on behalf of the state."  Tex. Parks &

Wildlife Code § 43.601(b).

       A release site is "a specific tract of land to which deer are released,

including the release of deer under the provisions of this chapter or Parks and

Wildlife Code, Chapter 43, Subchapters E, L, R, or R-1."  31 Tex. Admin. Code

§§ 65.90(29), 65.95(b).  A released deer is "liberated" and "free ranging."  Id.
§ 65.90(22), (28).  Like all deer in Texas, deer on a release site are the property of
the people of Texas.  Tex. Parks & Wildlife Code § 1.011(a).  A release site
registration confers no privilege to sell, transfer, or hold deer.  Cf. Tex. Parks &
Wild. Code § 43.357(a)(2) (conferring these rights to those who hold deer breeder
permits).

TPWD "may possess, take, transport, release, and manage any of the
wildlife and fish in this state for investigation, propagation, distribution, education,
disease diagnosis or prevention, or scientific purposes."  Tex. Parks & Wild. Code
§ 12.013(a).  TPWD may destroy deer that pose a threat to other deer or other
species, even if those deer are subject to a deer breeder's permit or DMP permit.
Id. §§ 43.953(b) (deer destruction prerequisites), 43.951(1) (breeder deer),
43.951(2) (DMP deer).

At the federal level, the Animal Protection Act governs the seizure,
quarantine, and disposal of animals deemed to be a threat under the USDA's
jurisdiction.  See 7 U.S.C. § 8301, et seq.  To achieve its goals, the USDA may
cooperate with other federal agencies or states.  7 U.S.C. § 8310(a).  Section 8306
authorizes the USDA to compensate the "owner of any animal, article, facility, or
means of conveyance" that the USDA requires to be destroyed for its fair market

value.  7 U.S.C. § 8306(d).  The USDA has enacted specific rules to carry out the

Animal Protection Act with respect to CWD.  9 C.F.R. § 55.2–.8.

After one of Crowder's does tested positive for CWD, all of the deer

in his deer breeding facility were placed under a Quarantine Order from the Texas

Animal Health Commission ("TAHC") pending an epidemiologic investigation.[1]

(Dkt. # 14 at ¶ 14.)  Purportedly under Texas Parks & Wildlife Code § 43.357(a-1),

Crowder voluntarily killed 50 breeder deer that had commingled with the CWD-

positive doe.  (Id. ¶ 15.)  One of those deer also tested positive for CWD.  (Id.)

According to Crowder, he asked for a "herd plan"[2] but he did not

receive one or any guidance for many months.  (Id. ¶ 16.)  TPWD advised Crowder

that the only action TPWD would accept was a complete depopulation of the entire

deer breeding facility under a herd plan between the TPWD, the TAHC, and the

USDA.  (Id. ¶ 17.)  Crowder's complaint states that TPWD estimated it would

charge him $13,000 to depopulate his herd and nearly $50,000 to test all the deer

for CWD.  (Id. ¶ 20.)  When Crowder asked Defendant Lockwood about the

possibility of obtaining any kind of reimbursement, Crowder alleges that

---

[1] As noted by Judge Lane in his Report, the following facts are taken from
Crowder's First Amended Complaint.  However, TPWD adamantly disagrees
with many of them.

[2] TAHC and permittees enter into a herd plan to manage the specific CWD risk
posed by a herd.  31 Tex. Admin. Code § 655.99(b).

Lockwood told him no funds were available.  According to Crowder, he was not told he had any right to apply and wait for subsequent funding.  (Id. at ¶ 17.)

Rather than continue to feed and care for the deer indefinitely, Crowder killed the remainder of the breeder deer in his deer breeding facility for humane purposes.  (Id. ¶ 18.)  Crowder states that he was concerned that TPWD would enter his facility in the middle of the night, using bright lights, and commence a mass shooting.  (Id.)  Crowder sent samples for CWD testing for all of the deer that had potentially been exposed to the additional deer that tested positive.  (Id. ¶ 23.)  He also stored samples for the deer that had not been exposed. (Id.)

TPWD sought a criminal search warrant to seize the samples and exhume the deer.  (Id. ¶¶ 29, 34.)  TPWD also sent Crowder an order indicating it intended to kill all of the deer in his DMP pens, a distinct herd and facility.  (Id. ¶ 36.)  TPWD entered Crowder's property just after midnight on May 17, 2022, and engaged in a mass shooting, killing his DMP deer.[3]  (Id. ¶ 38.)  According to Crowder, TPWD further threatened to kill all Crowder's deer on his ranch, not just those held in captivity.  (Id. ¶ 39.)

---

[3] At the time Crowder filed suit on May 16, 2022, TPWD had not yet entered his property to kill the deer in his DMP pens.  (Dkt. # 1.)  Instead, the mass shooting took place the next day, May 17, 2022, as alleged in Crowder's amended complaint.  (Dkt. # 14 at ¶38.)

On May 16, 2022, Crowder filed suit in this case.  (Dkt. # 1.) Crowder's amended complaint asserts that he has been deprived of his property without compensation or due process.  (Dkt. # 14.)  He seeks declaratory relief, injunctive relief, and actual damages.  (Id.)  On November 17, 2022, TPWD filed a motion to dismiss.  (Dkt. # 21.)  On December 12, 2022, Crowder filed a response in opposition.  (Dkt. # 22.)  On December 15, 2022, TPWD filed its reply.  (Dkt. # 24.)  On December 23, 2022, USDA filed its own motion to dismiss.  (Dkt. # 25.)  On January 17, 2023, Crowder filed a response.  (Dkt. # 30.)  On January 24, 2023, USDA filed its reply.  (Dkt. # 32.)

The motions were fully briefed and referred to Magistrate Judge Lane for his Report.  On June 6, 2023, Judge Lane issued his Report, recommending that the Court grant both motions to dismiss and that the case be dismissed without prejudice.  (Dkt. # 36.)  On July 5, 2023, Crowder filed both a motion for leave to amend his complaint and objections to the Report (Dkt. # 40); on July 12, 2023, both TPWD and USDA filed separate responses to Crowder's motion to amend as well as his objections to the Report (Dkts. ## 41, 42).

## APPLICABLE LAW

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which objection is made."). The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985). A district court need not consider "[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Report is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

<u>DISCUSSION</u>

In his Report, Judge Lane made the following findings: (1) Crowder has not shown that the state has waived its sovereign immunity for his claims for retrospective relief against TPWD for his breeder deer; (2) Crowder does not have a property interest in any release-site deer; (3) any claims against TPWD for his breeder deer also fail for lack of standing; (4) USDA has sovereign immunity for claims brought under the Animal Health Protection Act ("AHPA") because there is no private right of action granted against the USDA for those claims; and

8

(5) Crowder lacks standing to bring a claim against USDA based on the Administrative Procedures Act ("APA") because he has not identified a final agency action that he is challenging.  (Dkt. # 36.)  Given these findings, Judge Lane found that there was no need to determine whether Crowder's state permits create a property interest because most of his claims can be disposed of without reaching that issue.  (Id. at 7.)

In responding to the Report, Crowder first asks the Court for leave to amend his pleadings so that he may properly assert retaliation and plead a final administrative action.  (Dkt. # 40.)  Crowder also objects to the Report, arguing that the Report errs by failing to address whether he had a property interest in his deer breeder's permit and deer management permit.  (Id.)

A.    Objection

In his only objection, Crowder contends that Judge Lane erred when he failed to address whether Crowder has a property right in his deer breeder's and deer management permit for his taking without compensation and taking without due process claims.[4]  (Dkt. # 40 at 2.)  He asserts that his complaint alleges that

---

[4] Notably, Crowder did not file any objections as to Judge Lane's findings on the claims against USDA.  Upon review, the Court finds no clear error in Judge Lane's findings that Crowder failed to demonstrate a waiver of the United States's sovereign immunity and establish standing to bring his claims.  Nor does the Court find error in Judge Lane's conclusion that Crowder failed to properly allege an APA claim against USDA.

both permits not only convey certain rights to the permit holder, but also represent a significant financial investment by the permit holder.  (Id.)  He also maintains that section 43.953 of the Texas Parks and Wildlife Code does not provide for any kind of pre-deprivation hearing or require a medical evaluation of a threat to the health of other deer or other species, including humans, only a determination by TWPD.  (Id.)

In response, TPWD argues that Judge Lane had no reason to reach the merits of Crowder's takings claims (outside of his request for prospective relief regarding released deer) because he had already determined those claims were barred by Eleventh Amendment immunity.  (Dkt. # 41 at 2.)  Regarding his claims for prospective relief and related entirely to deer on his release site, TPWD contends that Judge Lane correctly found that Crowder lacks standing and therefore there was no need to address the rights conferred by a deer breeder permit.  (Id.)

Upon proper de novo review, the Court finds that the Magistrate Judge correctly determined that because Crowder's takings claims against TPWD can be dismissed based on lack of jurisdiction under Rule 12(b)(1), there is no need to consider whether Crowder has a property interest in either of his permits. Regarding Crowder's claims for prospective relief for the released deer, the Court also finds on de novo review that Crowder lacks standing because he has not plead

any intent to destroy the deer, nor does Crowder allege a property interest in these free-ranging deer that are not alleged to be held under a breeder permit. The Court has also carefully considered the relevant statues and case law, and like the Magistrate Judge, finds that Crowder simply lacks jurisdiction to bring these claims against TPWD. Therefore, Judge Lane properly recommended that they be dismissed without prejudice. Crowder's objection is therefore overruled.

      B.   <u>Leave to Amend</u>

      Crowder has moved for leave to amend so that he can address certain deficiencies outlined by Defendants and to promote "justice and judicial economy, as it will allow the parties to continue in the current proceeding." (Dkt. # 40.) Both TPWD and USDA oppose any amendment on the basis that Crowder has already filed two versions of his complaint and that they have already prepared two substantive motions to dismiss. (Dkt. # 41 at 3; Dkt. # 42 at 2–3.) Additionally, Defendants argue that Crowder's proposed amended complaint still does not cure the jurisdictional deficiencies identified by Judge Lane in his Report. Defendants further maintain that Crowder does not adequately state a retaliation or APA claim in his proposed amended complaint.

Upon consideration, the Court finds that, while there has been no scheduling order entered in this case,[5] leave to amend will be denied.  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint shall be freely granted "when justice so requires."  Fed. R. Civ. P. 15 (a)(2).  However, a court has discretion to deny leave to amend for reasons of undue delay, repeated failures to cure deficiencies, undue prejudice, or futility.  See, e.g., Foman v. Davis, 83 S. Ct. 227, 230 (1962); Thompson v. Texas Dep't of Criminal Justice, 67 F.4th 275, 283 (5th Cir. 2023) (citation omitted).

Crowder's proposed amended complaint makes two arguments pursuant to the Declaratory Judgment Act ("DJA") and 42 U.S.C. § 1983, claiming that TPWD retaliated against his free speech.  (Dkt. # 40-1 at 12.)  However, Crowder still seeks retroactive relief of compensation for the value of his deer and permits.  (Id.)  First, as argued by TPWD, the DJA does not establish jurisdiction.  (Dkt. # 41 at 5.)  Instead, the DJA "is a procedural statute, not a jurisdictional statute, and it does not waive sovereign immunity nor provide an independent basis for federal court review."  Offong v. Holder, 864 F. Supp. 2d 611, 627 (S.D. Tex. Mar. 27, 2012) (citing 28 U.S.C. § 2201).  Crowder still has not fulfilled the jurisdictional requirements before alleging a claim pursuant to the DJA.

---

[5] This case was not reassigned to the undersigned until April 26, 2023, and the motions to dismiss addressed in this case were already pending.  (See Dkt. # 35.)

Regarding his § 1983 retaliation claim, Crowder's proposed amended complaint still fails to demonstrate the state's waiver of sovereign immunity.  "In cases where a party seeks to enjoin the state pursuant to § 1983, the Supreme Court explained that sovereign immunity bars a party from doing so because neither the state nor its agency is a 'person' for purposes of § 1983." Ross v. Tex. Educ. Agency, 409 F. App'x 765, 769 (5th Cir. 2011) (citing Quern v. Jordan, 440 U.S. 332, 341 (1979)).  Thus, Crowder's proposed § 1983 claim is still barred by the Eleventh Amendment.  And, even if were not barred, the proposed retaliation claim fails to properly allege the necessary elements of a free speech retaliation claim under § 1983.

Furthermore, Crowder's proposed amended complaint likewise fails to properly allege a final agency action with respect to his APA claim against USDA.  Crowder has also failed to allege that he applied for funds which were denied by the USDA.  Thus, Crowder has failed to allege the necessary elements to sustain this claim against USDA.

Given the above, the Court will deny Crowder leave to file his amended complaint.  Crowder has failed to cure previous deficiencies and the Court additionally finds that amendment of the claims at this point would be unduly prejudicial to Defendants.

CONCLUSION

Based on the foregoing, the Court (1) **ADOPTS** Judge Lane's Report (Dkt. # 36), (2) **GRANTS** TPWD's Motion to Dismiss (Dkt. # 21); (3) **GRANTS** USDA's Motion to Dismiss (Dkt. # 25); and (4) **DENIES** Crowder's Motion for Leave to Amend Pleadings (Dkt. # 40).  It is **ORDERED** that Crowder's claims are **DISMISSED WITHOUT PREJUDICE**.  The Clerk's Office is **INSTRUCTED** to **ENTER JUDGMENT** and **CLOSE THE CASE**.

**IT IS SO ORDERED.**

**DATE:** Austin, Texas, July 27, 2023.

_____
David Alan Ezra
Senior United States District Judge

14